## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MAGGIE L. ROBINSON,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:14-CV-944-KOB** |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| **Acting Commissioner of,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

### I. Introduction

The claimant, Maggie Louise Robinson, filed a Title XVI application for Supplemental Security Income benefits on March 24, 2011.[1] (R. 46). The claimant alleges disability beginning on October 9, 2009 because of chronic obstructive pulmonary disorder, cervical degenerative disc disease, and cocaine polysubstance abuse. (R. 14-15). The Social Security Administration denied her application and affirmed the denial on reconsideration. (R. 47). The claimant timely requested a hearing before an ALJ, and the hearing occurred on March 18, 2013. (R. 25, 56).

The ALJ denied the claimant SSI benefits on April 15, 2013, finding that the claimant was not disabled because she could perform medium work with some restrictions.[2] (R. 19). The

---

[1] Although the claimant's brief claims the date of filing was March 14, 2011, the record reflects an actual filing date of March 24.

[2] Contrary to statements in the claimant's brief, the ALJ's decision actually found the claimant unable to perform her past relevant work.

1

claimant requested review by the Appeals Council on May 9, 2013, and the Appeals Council denied the claimant's request for review on March 19, 2014. (R. 1, 9). Having exhausted her administrative remedies, the claimant now properly appeals the ALJ's decision, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The claimant filed this appeal on May 20, 2014, sixty-two days after the administrative decision. (Doc. 10, at 9). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. Issue Presented

The claimant presents one issue for review: whether the ALJ failed to develop the record fully and fairly when he did not order additional physical evaluations of the claimant's assertion of disability because of chronic obstructive pulmonary disorder and cervical degenerative disc disease.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court will overturn the Commissioner's decision only if she failed to apply the correct legal standard or if her factual conclusions are unsupported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No... presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Id.* at 999. The court does not review the Commissioner's findings of fact de novo, however. It affirms the factual determinations if they are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

2

as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, ...but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416,927(d). Whether a claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. Legal Standard

A person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

3

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt 404, Subpt. P, App.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

Because an ALJ hearing is not an adversarial proceeding, the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham*, 129 F.3d at 1422. The ALJ does not err in denying a request for a consultative examination if substantial evidence supports the ALJ's decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209–10 (11th Cir. 1988); *see also Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). The ALJ's duty to develop a full and fair record does not shift the burden of proof to the Commissioner or relieve the claimant of her obligation to prove her alleged disability. *Ellison*, 355 F.3d at 1276; 20 C.F.R. § 416.912©.

Imposing an obligation on the ALJ to develop a full and fair record ensures that the ALJ has fulfilled his duty to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts. *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). To develop a full and fair

4

record, the ALJ is required at a minimum to develop the medical history for the 12 months before the application date for SSI benefits. *Ellison*, 355 F.3d. at 1276 (11th Cir. 2003). A full and fair record both ensures that the ALJ has fulfilled the duty to explore the relevant facts and enables the reviewing court to "determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Id*.

A claimant's failure to cooperate in providing evidence can preclude recovery because "[a]n individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A) (2004). Failure to develop the record is only reversible error when the failure adversely affects the claimant's possibility of recovery. "[T]here must be a showing of prejudice before we will find that...the case must be remanded...for further development of the record." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir.1985).

## V. Facts

The claimant was fifty-seven years old in 2011 when she filed her application for SSI benefits. Her application sought benefits based on alleged disability beginning on October 1, 2009. The claimant was fifty-nine years old at the time of the administrative decision. (R. 18, 20). She has an eleventh grade education. (R. 33). The claimant has prior relevant work experience as a full-time kitchen helper, which is unskilled labor at the medium level of exertion. (R. 18). According to the claimant, she first became unable to work October 1, 2009 because of arthritis and vision problems. (R. 140).

On July 16, 2010, the claimant underwent a physical exam by Dr. Daniel Kyle, who found that the claimant had normal respiration rhythm and depth, no wheezing, and no decrease

5

in breath sounds. Dr. Kyle also noted that the claimant's cervical spine rotation was not diminished and that her cervical spine had full range of motion, although he did find some spinal pain brought on by bilateral bending and pain in one neck muscle a month after the claimant's husband struck her. (R. 243).

The claimant underwent a psychiatric evaluation on May 5, 2011 by Dr. Kirsten J. Bailey, who evaluated the claimant at the request of the Social Security Administration. (R. 201). Dr. Bailey found that the claimant had no medically determinable psychiatric impairment and no behavioral changes associated with any cocaine abuse. (R. 201, R. 209).

The Disability Determination Service authorized a physical exam for the claimant on May 23, 2011. On June 11, 2011, Dr. Michael Lyerly, examined the claimant and diagnosed her with shoulder and neck pain, likely because of degenerative disc disease, and shortness of breath, possibly because of COPD or bronchitis. Dr. Lyerly found that the claimant's shortness of breath limits her ability to exert herself, although he also noted that the claimant had no difficulty getting on the exam table, a lack of spinal tenderness to the touch, normal muscle tone, 5/5 muscular strength, and pain only when checking her deltoid strength against resistance, as opposed to passive shoulder motion. Dr. Lyerly also noted that the claimant cared for all her own personal needs and performs light housework such as washing dishes and sweeping. Additionally, the claimant wrote in her function report to the SSA that she goes shopping monthly for small items like dish soap so that she can do household chores. (R 146, 215-219).

On July 1, 2011, DDS specialist Sherri Zitrick authorized a spirometry test to evaluate the claimant's pulmonary function.  However, the claimant missed a medical exam scheduled by the DDS to evaluate her asserted COPD on August 9, 2011. She also failed to show up for the

rescheduled exam on August 25, 2011. (R. 222, 279).[3]

On August 9, 2011, the claimant missed her first appointment at UAB Highlands Pulmonary Lab to examine her for effects of COPD. The claimant arrived eighty minutes after her appointment's scheduled time, and the lab's section coordinator rescheduled the appointment.[4] (R. 222). DDS specialist Zitrick then informed the claimant that she would not be able to reschedule the appointment another time if the claimant missed the next appointment. (R. 172).

The claimant then, on August 25, 2011, missed the rescheduled pulmonary exam.  The claimant's granddaughter left a voicemail on the pulmonary lab's office phone on the date of the appointment saying that the claimant would not be at the appointment. The record contains no indication that the claimant's granddaughter gave any reason why the claimant would miss the appointment. On August 26, 2011, the day after the claimant failed to show up, Dr. Richard Whitney indicated the file did not have enough information to rate the claimant without an exam although earlier x-ray results indicate degenerative changes in the claimant's cervical spine on May 19, 2008.(R. 279-280).

The claimant went to Cooper Green Mercy Hospital on November 18, 2011 for treatment of injuries she received when she fell getting out of the shower. Dr. Raymond Broughton treated the claimant, and he noted that she walked without assistance even though she claimed her pain

---

[3]The claimant asserts in her brief that she did not actually miss the August 9, 2011 appointment but instead only arrived late. This claim stretches the term "late" much too far. By any reasonable standard, arriving well over an hour late equates to missing a scheduled doctor's appointment.

[4]While the name of the section coordinator is illegible, the latter half of the title is legible.

was worsening. (R. 315).

On January 31, 2012, the claimant sought treatment at Cooper Green Mercy Hospital because of back spasms after she lifted a heavy bucket.[5] Dr. Willard Mosier noted that she had a quick, normal gait and a slightly limited ability to twist because of her pain from the back spasms. (R. 311).

The claimant sought treatment at Cooper Green Mercy Hospital on March 7, 2012 for rib pain that began when she reached over a pew to pick up something. Dr. Mosier assessed that the claimant appeared in moderate distress and ordered prescriptions of Naprosyn, Tramadol, and Prednisone to treat inflammation in her chest. (R. 308-310).

On April 2, 2012, the claimant underwent spinal imaging on the orders of Dr. James Floyd at Cooper Green Mercy Hospital after injuring her back and knee in a fall. Dr. Floyd noted that three views of the cervical spine showed marked anterior spondylosis at all levels and that his impression was that the claimant suffered from prominent cervical spondylosis. (R. 319-321).

On July 30, 2012, the claimant went to Cooper Green Mercy Hospital where she underwent treatment for chronic neck pain. Devona Clark Mahone, a patient care technician, assessed the claimant in an orthopedic exam, and the claimant reported her pain to be at nine on a one-to-ten scale. The claimant received prescriptions for Naproxen, Tramadol, Prednisone, and Cyclobenzaprine. The claimant had full range of motion in her neck at this exam. (R.302-306).

The claimant spent the night of February 15, 2013 under observation at UAB Medical West Hospital because she passed out after a night of drinking. Dr. Mohannad Azzam examined

---

[5]This statement contradicts the claimant's testimony to the ALJ that she was limited to picking up a piece of paper in her yard.

the claimant and noted that this syncopal episode was likely because of alcohol intoxication and cocaine abuse. Dr. Azzam ordered a chest x-ray that showed no acute abnormalities. Dr. Azzam noted that the claimant's lungs were hyperinflated and ordered albuterol treatment, and he both counseled the claimant on her abuse of cocaine and placed her on withdrawal watch because of her alcohol abuse. (R. 284-287).

## VI. The ALJ Hearing

On March 18, 2013, ALJ Joseph Heimann held a hearing on the claimant's appeal from the initial determination that she did not qualify for SSI benefits. The claimant appeared in person with her attorney, William Hanlin.

The ALJ asked the claimant about her two missed appointments for pulmonary function testing ordered by the Disability Determination Service. The claimant agreed with Mr. Hanlin's statement that her missed appointments were both because she needed to change buses three times to get to the appointment location and arrived too late for her appointment on each date.[6] The ALJ said he would consider the fact that public transportation can cause problems getting to scheduled appointments in making his decision. Mr. Hanlin told the ALJ that he intended to amend the claimant's alleged onset date to the date of filing, and the claimant agreed that she had no basis for requesting that the ALJ reopen her earlier Title XVI claim. (R. 27-30, 44).

The claimant testified to taking Tramadol and Flexeril twice daily to treat serious burning pain. The claimant testified that she lived alone in a house and that her son and daughter-in-law came to check on her well-being daily because she had sporadic fainting spells. These fainting

---

[6]This claim is directly in contrast with the record, which indicates that claimant's granddaughter called the office of the testing lab on August 25, 2011 and left a message stating that claimant would not be able to make her scheduled appointment. (R. 279).

spells occurred occasionally, and she had one such incident in the previous year, resulting in a February 2012 trip to the hospital. (R. 31-32).

The ALJ then asked the claimant about her education, and she testified that she finished only the eleventh grade because she became pregnant. The claimant stated she never tried to get her GED because her husband took care of her until they separated. She last worked in 2009 at Larry's Fish Pot, where she received her pay in cash. (R. 33).

The ALJ noted that the claimant had made over $10,000 working at Mr. Hot Dog, and the claimant testified that she had worked there full-time cooking, washing dishes, mopping, unloading trucks, and stocking with the assistance of a dolly. The ALJ asked why the claimant had quit working at Mr. Hot Dog, and the claimant could not remember why she had stopped working there after initially stating that the owner had sold the business. (R. 34-35).

The ALJ then asked the claimant about her medication use. She testified to using prescribed Naproxen and Tramadol to reduce inflammation in her knee and chest. The claimant then asserted that she could not afford the prescription she received to assist her breathing and instead used a "little nasal thing" to help relieve her breathing trouble. The ALJ then asked about claimant's cigarette smoking, and the claimant answered that she had cut back to two to five cigarettes each day. (R. 37-38).

The claimant testified that her physical abilities were limited to picking up a single piece of paper out of her yard and that she was only able to stand in one spot for ten minutes at a time before needing somewhere to sit. She testified that she could not perform her prior work because of her shortness of breath and inability to reach overhead. (R. 39-40).

The ALJ questioned the vocational expert, Ms. Norma Darnell Strickland, who testified

10

that the claimant's past relevant work was medium, unskilled work. Ms. Strickland testified that a person limited to medium work, who had limited education, as well as restrictions on climbing, reaching overhead, and exposure to airborne particulates, could not perform the claimant's past work, primarily because of the complete restriction on reaching overhead. Ms. Strickland then testified that a person with such restrictions could perform other work present in significant numbers in the national economy, including working as a self-service laundry attendant (with 26,000 jobs available nationally); a merchandise deliverer (with 22,000 jobs nationally); and a counter clerk (with 96,000 jobs nationally). (R. 42-43).

The ALJ re-examined the claimant and asked how she had been able to get by for the previous several years without working. The claimant said that she received Section 8 housing benefits, utility assistance, and help from her boyfriend with other expenses. The ALJ then asked the claimant whether she was still using cocaine. The claimant responded that she was still using cocaine, had used cocaine two days before the hearing, and would attempt to use therapy to stop using cocaine at some point in April. (R. 43-44).

## VII. The ALJ Decision

First, the ALJ found that the claimant had not engaged in substantial gainful activity since the date of her application for disability benefits. Next, the ALJ found that the claimant's cervical degenerative disc disease with spondylosis and her chronic obstructive pulmonary disorder were severe impairments because they "significantly limit [the claimant's] physical or mental ability to do basic work activities." (R. 14).

The ALJ also found the claimant's cocaine polysubstance abuse to be a non-severe impairment because it did not "cause more than a minimal function limitation that is expected to

11

last more than twelve months." The ALJ noted that the claimant did not assert that her substance abuse had resulted in any limitations and that evidence in the record supported only one substance abuse related incident that occurred after the claimant passed out from drinking. (R. 14).

The ALJ then found that the claimant did not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 15).

The ALJ found that the claimant has the residual functional capacity to perform medium work with the restrictions that she can never climb ropes, ladders, or scaffolds and can never reach overhead bilaterally. The ALJ also found that the claimant must avoid working in poorly ventilated areas and must avoid exposure to moderate levels of pulmonary irritants. (R. 15).

To make this determination, the ALJ relied on the objective medical evidence in the record, which included physicians' assessments of the claimant, and on the expert opinion evidence of the occupational specialist. The ALJ determined that the claimant's credibility on both her level of pain and her self-reported limitations on standing and walking was questionable because of the medical evidence from her physical examination. Dr. Michael Lyerly found the claimant to have no difficulty walking or sitting and no spine or shoulder tenderness to the touch; she had normal muscle tone and pain only when raising her arms against resistance to check deltoid strength. The ALJ noted that the claimant sought treatment after falling while showering and injuring herself lifting a heavy bucket—activities that are incompatible with her asserted disability. (R. 15-16).

The ALJ further considered the claimant's work history prior to her alleged onset of

12

disability, noted her sporadic employment up to that point, and stated that her meager work history, coupled with her continued use of cocaine, suggests that the claimant's unemployment is likely related to a lack of motivation to work. (R. 17-18).

The ALJ found that the claimant could not perform her past relevant work, but concluded that the claimant was not disabled because she had the ability to perform the work of other jobs present in significant numbers in the national economy, including jobs as a counter clerk, a merchandise deliverer, and a self-service laundry attendant. The ALJ noted that while the Medical-Vocational Guidelines would normally direct a finding of "not disabled" for an applicant of the claimant's vocational profile, the claimant in this case had additional limitations to her ability to perform all or substantially all of the requirements of medium work. In light of these additional limitations, the ALJ relied heavily on the testimony of the occupational expert to determine that the claimant could perform other work. The ALJ verified the occupational expert's testimony by referring to the Dictionary of Occupational Titles. Based largely on the occupational expert's verified testimony that the claimant could perform other work, the ALJ found that the claimant is not disabled. (R. 15-19).

## VI. Discussion

The claimant asserts that the ALJ erred because he failed to fully and fairly develop the record when he did not obtain testing to evaluate the claimant's COPD and cervical degenerative disc disease. This claim rests on the notion that a consultative examination by a physician is a *requirement* to adequately assess a claimant's disability status. This court disagrees.

Although the ALJ has a duty to develop the record, the claimant's assertion that the ALJ erred in this case because he did not order yet another examination—after the claimant failed to

13

show up for multiple prior medical exams—falls flat. The claimant has an obligation to cooperate with attempts to develop the record because the claimant bears the duty to provide evidence in support of her disability claim. "[T]he claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison*, 355 F.3d at 1276; *see also* 20 C.F.R. § 416.912(c) (stating, "You must provide evidence...showing how your impairment(s) affects your functioning during the time you say that you are disabled.").

Failure to cooperate in providing evidence can preclude recovery because "[a]n individual shall not be considered to be under a disability unless [she] furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A) (2004). Further, failure to develop the record is only reversible error when the failure adversely affects the claimant's possibility of recovery. "[T]here must be a showing of prejudice before we will find that...the case must be remanded...for further development of the record. *Kelley,* 761 F.2d at 1540.

Here, the claimant has not shown that the lack of an additional exam has prejudiced her case.  The claimant's failure to  simply show up to either scheduled exam itself created the issue of an alleged incomplete record.

The ALJ will order an exam rescheduled when a claimant has good reason for missing it:

> If you are applying for benefits and do not have a good reason for failing...to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind....If you have a good reason, we will schedule another examination. We will consider your physical, mental, educational, and linguistic limitations...when determining if you have a good reason for failing to attend a consultative examination.

20 C.F.R. § 404.1518. In this case, the claimant gave no good reason for missing her exams. She makes no claim of illness preventing her from showing up on time, the examiner confirmed the appointment with her shortly before the appointment date, and the claimant has presented no evidence of a family member's severe illness or death. Needing to make multiple bus transfers is not good cause for missing an appointment. Even so, the claimant still had another chance to have a pulmonary exam, and she missed that appointment as well. The claimant asks this court to reverse the ALJ's decision for failure to develop the record where her own failure to cooperate is the sole reason that the record may be incomplete. The court will not do so.

Further, if the record contains sufficient information for the ALJ to render a decision based on substantial evidence, additional testimony is unnecessary. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). In this case, the ALJ had the claimant's medical records available to him, and those medical records support reasonable credibility doubts about the claimant's testimony about her physical ailments. First, the ALJ correctly noted that the claimant contradicted the record on her reasons for missing a medical exam that the Commissioner scheduled to evaluate her pulmonary function. The ALJ also found that the claimant has conducted activities that are inconsistent with her claim of disability. The ALJ noted that she injured herself while lifting a heavy bucket, which is inconsistent with her testimony to the ALJ that she could only pick up a piece of paper out of her yard. The ALJ considered these multiple factors in finding that the claimant was less than fully forthcoming.

Further, the ALJ noted that the claimant's pain was inconsistent with the physical degeneration she had experienced, in part because Dr. Lyerly found the claimant to have pain only in one situation, when pushing against resistance with raised arms. Even the claimant's own

15

testimony to the ALJ about her daily activities undercuts her claim of disability. Her admissions that she performs light chores and cooks for herself significantly undermine her claim that she cannot perform her prior work of cooking and cleaning, especially in light of the lighter duties of the jobs that the vocational expert informed the ALJ that she could perform.

The claimant's brief asserts that it "appears unlikely" that the claimant could adequately perform the full range of duties required for medium work. This court does not substitute its judgment for that of the ALJ. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). If substantial evidence supports the ALJ's decision, this court will not overturn that decision. *Id.*

Here, the ALJ considered the claimant's own testimony and credibility, the results of the physical exam she underwent, and the occupational testimony of the vocational expert. In fact, the ALJ did determine that the claimant could not perform the full range of medium work. The claimant simply does not provide any evidence to contradict the ALJ's determination that the claimant cannot perform her past work, but can perform the work of some jobs present in significant numbers in the national economy. The ALJ based his decision on the testimony in the record that the claimant could perform at least the jobs of laundry attendant, merchandise deliverer, and counter clerk, all of which are present in significant numbers in the national economy, and this court finds that his decision rests on substantial evidence.[7]

The ALJ's duty to consider evidence that detracts from the support for his decision does

---

[7]The court does wonder why the ALJ referenced the claimant's irrelevant activities of reading and watching television when considering the claimant's credibility on her restrictions. The claimant's sedentary activities inform no one on her ability to do medium work, and considering them is counterproductive in determining the claimant's exertional abilities. Even so, the claimant's admissions that she performed chores, cooked, and went out to shop certainly discounts her testimony that she was only able to pick up a piece of paper.

not mean that he must give credence to total speculation based without evidence in the record. The ALJ's role is not to give the claimant the benefit of possible but unasserted causes for her failure to show up. "It is the ALJ's job to weigh the evidence of record, not to engage in speculation." *Davis v. Astrue*, 478 F.Supp.2d 1342, 1349 (N.D.Ala. 2007).

Here, the record contains sufficient information for the ALJ to make a decision based on substantial evidence; the ALJ ordered an exam that would provide additional information; the claimant had the opportunity to provide the requested additional information; and the claimant repeatedly failed to do so. This court will not reverse the decision of an ALJ for failure to develop the record under these circumstances.

## VII. CONCLUSION

Refusal to order an additional medical exam when the claimant has missed two prior exams does not mean the ALJ failed to develop the record fully and fairly where sufficient medical evidence, in the form of multiple medical exams, exists in the record to render a decision based on substantial evidence. The court concludes that the Commissioner's decision should be AFFIRMED.

A separate order will be entered.

DONE and ORDERED this 1st day of July, 2015.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE